JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

REID ZLOTKY

**DEFENDANTS**

THE TRUSTEES OF PRINCETON UNIVERSITY d/b/a PRINCETON UNIVERSITY, et al.

**(b)** County of Residence of First Listed Plaintiff    Dallas
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Mercer
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Charles J. Kocher, Esq., McOmber McOmber & Luber, P.C.
39 E. Main Street, Marlton, NJ 08053
(856) 985-9800

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☐ 2   U.S. Government Defendant
- ☐ 3   Federal Question *(U.S. Government Not a Party)*
- ☒ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☒ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332(d)
Brief description of cause:
Breach of Express and Implied Contract, Unjust Enrichment, Conversion

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE
11/19/2020

SIGNATURE OF ATTORNEY OF RECORD
/s/ Charles J. Kocher

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| REID ZLOTKY, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE TRUSTEES OF PRINCETON UNIVERSITY d/b/a PRINCETON UNIVERSITY, and DOES 1 through 10 inclusive,<br><br>Defendants. | Civil No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff REID ZLOTKY, on behalf of himself and all others similarly situated, by and through his attorneys, Shegerian & Associates, Inc. and McOmber McOmber & Luber, P.C., hereby files the Class Action Complaint against Defendant THE TRUSTEES OF PRINCETON UNIVERSITY ("Princeton" or "Defendant"); and DOES 1 through 10 inclusive, (collectively, "Defendants"), and states as follows:

## I.    NATURE OF THE ACTION

1.   This is a class action for breach of contract, breach of implied contract, unjust enrichment, and conversion on behalf of Plaintiff and all others similarly situated.   Princeton has shut down its campus facilities, discontinued all live in-classroom instruction of all courses, and instead moved all instruction to virtual online pre-recorded and/or live streaming video instruction.   While these actions are

attributable to the COVID-19 pandemic and Executive Orders in effect in the State of New Jersey, Defendant Princeton has unlawfully and unjustly retained Plaintiff and Class members' tuition and fees, despite the fact that Defendants are unable to provide, and are not providing, the services and facilities for which they bargained. These fees and tuition costs easily amount to thousands of dollars per student.

2.    While Princeton does not bear culpability for the campus closures or the inability to provide any classroom instruction, neither do the enrolled students. Yet, while Princeton has used the current COVID-19 shutdown circumstances to excuse its duty to perform fully the obligations of its bargain with its students, Princeton continues to demand that all students perform their contractual bargain to pay all tuition and fees for the Spring 2020 term. This is contrary to fundamental tenets of contract law. The indefensible breach is saddling wholly innocent students with mounting debt as a result of having to pay tuition and fees for services they are not receiving and facilities and services that are not being provided. In so acting, Defendant Princeton is unjustly enriched at the expense of Plaintiff and putative Class members he seeks to represent.

3.    Princeton breached its contractual duties by ceasing all in-classroom instruction, shutting down campus facilities, and evicting students in student housing, while continuing to assess and collect tuition and fees from Plaintiff and class members. Undoubtedly, however, the performance now being provided by Princeton and its campus facilities is different from and of substantially lesser value than what was bargained for at the time of Plaintiff's and class members' enrollment.

4.    Plaintiff therefore brings the action on behalf of himself and all other similarly situated students of Princeton to seek redress for its breach of contract, breach of implied contract, unjust enrichment, and conversion.

## II.    PARTIES AND JURISDICTION

5.  Plaintiff Reid Zlotky ("Zlotky") is a resident of Dallas County, Texas. Plaintiff Zlotky was an undergraduate student at Princeton University during the 2019-2020 academic year.  Plaintiff Zlotky completed his first year in May 2020 and is currently attending Princeton as a sophomore.

6.  Defendant Princeton is a private university located in the Princeton, New Jersey.  Defendant is doing business in the State of New Jersey as a non-profit corporation incorporated under the laws of New Jersey; operating in the State of New Jersey; and is availing itself of the privileges and obligations associated therewith.

## III.    JURISDICTION AND VENUE

7.  The Court has jurisdiction over the subject matter presented by the Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), which confers original jurisdiction on federal courts over a class action with at least 100 putative class members, minimal diversity in which any member of the putative class is a citizen of a state different from any defendant, and in which the amount in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs.

8.  Plaintiff alleges that there are at least 100 putative class members with student enrollment in the thousands at Defendant Princeton.

9.  Plaintiff alleges that the amount in controversy exceeds $5,000,000.00, pursuant 28 U.S.C. § 1332(d)(2) and (6).

10.  Plaintiff alleges that minimal diversity exists with members of the proposed class residents of states other than New Jersey and further that less than two-thirds of the proposed class are residents of New Jersey.

11.  Venue within this District is proper because Defendant Princeton is located at 1 Nassau Hall, Princeton, New Jersey 08544, which is within this District, is

operating a university at its campus, and the acts complained of occurred within the District.

## IV.    FACTUAL ALLEGATIONS

### A.    Princeton University

12.    Defendant Princeton University is a private university with an enrollment of approximately 8,483 students during the 2019-2020 academic year, which includes approximately 5,328 undergraduate students and 2,997 graduate students, and 158 special students.[1]

13.    The rate of annual tuition paid by undergraduate students during the 2019-2020 academic year was $51,870 or $25,935 for the semester.[2]  The standard tuition rate for all graduate students during the 2019-2020 academic year was $51,870.[3] Defendant *raised* its tuition rates for 2020-2021 to $53,890.[4]  Defendant, however, announced on August 7, 2020 that its Fall 2020 semester would be "fully remote."[5] Classes were scheduled to begin just weeks later on August 31, 2020 for the Fall

---

[1]

https://tableaupublic.princeton.edu/t/OfficeoftheRegistrarStatistics/views/Registrar_OpeningEnrollment/Story1?:isGuestRedirectFromVizportal=y&:embed=y (last visited Nov. 12, 2020).

[2]

http://web.archive.org/web/20190819210153/https://admission.princeton.edu/cost-aid/fees-payment-options  (last visited Nov. 12, 2020).

[3]

https://web.archive.org/web/20191215213150/https://gradschool.princeton.edu/costs-funding/tuition-and-costs (last visited Nov. 12, 2020).

[4] https://admission.princeton.edu/cost-aid/fees-payment-options (last visited Nov. 16, 2020).

[5] https://www.princeton.edu/news/2020/08/07/fall-2020-update-undergraduate-education-be-fully-remote (last visited Nov. 16, 2020).

2020 term.[6]

14.    Additionally, Defendant assessed a variety of fees to its students for the 2019-2020 academic term.    These fees are assessed to students for services rendered, including student center fees and other resources available to students on campus.  By way of example, Plaintiff Zlotky and others were assessed and paid the following fees that were not refunded for the 2019-2020 academic term:

- A "College Fee" in the amount of $203.00 per semester.
- An "Activity Fee" in the amount of $42.50 per semester.
- A "Class Dues" fee in the amount of $31.00 per semester.
- An "Athletic Dues" fee in the amount of $7.25 per semester.

15.    Plaintiff and Class members paid all that they owed for tuition and fees.  Plaintiff registered and paid for in-person classes for the Spring semester based on Defendants' representations made in admissions brochures and materials online.  It was the reasonable expectation of Plaintiff and putative Class members that Defendant would provide in-person instruction for the entire term, and they enrolled for the term and paid all fees and tuition based on such expectations and representations.

16.    According to its promotion materials, Princeton has represented that students will get to work closely with faculty in and outside of the classroom:

> Nearly 75% of our classes have fewer than 20 students, which means our faculty of world-class scholars are engaged with and accessible to undergraduates. Professors care about the well-being of their students, and students often form meaningful relationships with their professors. You will get the chance to work closely with faculty inside and outside the classroom.[7]

---

[6] https://ua.princeton.edu/contents/academic-calendars (last visited Nov. 18, 2020).

[7] https://admission.princeton.edu/sites/default/files/508_Viewbook_full_2019.pdf

17.  Defendant has also promoted a "vibrant campus life" and these in-person experiences "can be as important and inspiring as your education in the classroom."[8] Defendant also promotes that "[t]hrough ['meaningful service on campus' and other 'civic engagement'] students often view service as central to their education and to their lives beyond Princeton."[9]

18.  Plaintiff brings this action on behalf of himself and similarly situated students who enrolled in Princeton during the Spring 2020 academic term and thereafter, including without limitation the Summer 2020 or Fall 2020 academic terms.

## B.    Coronavirus Disease 2019 (COVID-19)

19.  In December 2019, the Chinese government identified a novel coronavirus found in the Wuhan province called sever acute respiratory syndrome coronavirus 2 (SARS-CoV-2).  This strain of coronavirus caused Coronavirus disease 2019 ("COVID-19"), an easily spread and unusually lethal disease in certain population groups.[10]

20.  This disease quickly and explosively spread due to its ability to survive in small respiratory droplets and the World Health Organization characterized COVID-19 as a "public health emergency of international concern" in late January and as a pandemic on March 11, 2020.[11]

---

at 12 (last visited Nov. 18, 2020).

[8] *Id.* at 28.

[9] *Id.* at 38.

[10] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7128332/. (last visited Nov. 12, 2020).

[11] https://www.who.int/dg/speeches/detail/who-director-general-s-opening-

21.  On March 9, 2020, New Jersey Governor Phil Murphy declared a State of Emergency and a Public Health Emergency, effective immediately, to ramp up New Jersey's efforts to contain the spread of COVID-19.[12]

22.  On March 16, 2020 Governor Murphy announced aggressive social distancing measures to mitigate further spread of COVID-19 in New Jersey.  To this end, Governor Murphy ordered that all gatherings be limited to 50 persons or fewer and closed the premises of all public, private, and parochial elementary and secondary schools.  Additionally, all institutions of higher education were ordered to cease in-person instruction beginning March 18, 2020.[13]

23.  On March 21, Governor Murphy entered an Executive Order requiring all individuals living in New Jersey to stay home or at their place of residence, with few exceptions for essential services.[14]

24.  As of November 12, 2020, New Jersey has reported 266,986 total cases, 14,694 total confirmed deaths and another 1,801 probable deaths caused by COVID-19.[15]

####     C.     Defendant Charges Millions of Dollars for Tuition and Fees Despite Providing Virtual Classes During the Pandemic.

---

remarks-at-the-media-briefing-on-covid-19---11-march-2020 (last visited Nov. 12, 2020).

[12] https://nj.gov/governor/news/news/562020/approved/20200309b.shtml (last visited Nov. 12, 2020).

[13] https://nj.gov/infobank/eo/056murphy/pdf/EO-104.pdf (last visited Nov. 12, 2020).

[14] https://nj.gov/infobank/eo/056murphy/pdf/EO-107.pdf  (last visited Nov. 12, 2020).

[15] https://covid19.nj.gov/ (last visited Nov. 12, 2020).

25.   The spread of the 2019 coronavirus (COVID-19) has radically changed life in this country with profound impacts on nearly every segment of American life.  In response to the pandemic, colleges and universities have taken aggressive measures, which include eliminating in-person classroom instruction and replacing it with online instruction, which is in the form of a combination of pre-recorded or live-streamed video instruction.

26.   In particular, for the remainder of the Spring 2020 term, Defendants instituted mandatory "virtual" classes and ceased to provide its typical on-campus resources to students—including access to laboratories, libraries, dining halls, fitness centers, and various student learning services.

27.   On or about March 9, 2020, Defendant directed all faculty to move all lectures, precepts and seminars to online methods by March 23, 2020 for a period of at least two weeks.[16]

28.   On or about March 11, 2020, Defendant announced that "all courses, graduate and undergraduate, must be taught entirely online by March 23rd, if not before" and that, with few exceptions, all students "must leave campus and stay home for the rest of the semester." [17, 18]

29.   Defendant ended all in-person classroom instruction and drastically changed the educational opportunities available to students, severely crippling Plaintiff and Class members from receiving the education for which they paid.

30.   Defendant attracts students to its world-renowned programs by emphasizing its campus life, with a "600-acre campus located in a cosmopolitan

---

[16] https://emergency.princeton.edu/node/592 (last visited Nov. 12, 2020).

[17] https://www.princeton.edu/news/2020/03/11/university-issues-further-covid-19-guidance-accommodations-and-criteria-remaining (last visited Nov. 12, 2020).

[18] https://emergency.princeton.edu/node/600 (last visited Nov. 12, 2020).

town," where "Princeton guarantees students on-campus housing for all four years."[19]

31.   By and large, the commitments promised to students were and are left unfulfilled with Defendant barring students from campus and imposing mandatory virtual classes.  In short, the plethora of resources bargained and paid for by students have been denied.

32.   As a result of the transition to virtual learning online, the educational services Plaintiff and Class members were supposed to receive—in-person instruction—were not provided at all.

33.   Despite closing its campus and failing to offer in-person classes, Defendant continues to charge millions in tuition and fees.  While students enrolled and paid for a comprehensive educational experience at Defendant's campus, Defendant has, instead, provided a limited online experience, lacking invaluable in-person learning opportunities.

34.   Defendant is profiting from the pandemic while further burdening students and families, many of whom have been financially and/or physically impacted by COVID-19.

35.   Consequently, Plaintiff and Class members have suffered harm by losing the education, services, and other experiences Defendant promised to its students. Plaintiff and similarly situated students seek disgorgement of their payments for unused services and refund of the tuition for the promised services that were not delivered.

## V.        CLASS ACTION ALLEGATIONS

### Class Definition

36.   Plaintiff brings this action pursuant to 28 U.S.C. § 1332(d) on behalf of a

---

[19] https://admission.princeton.edu/campus-life (last visited Nov. 12, 2020).

proposed class of persons (the "Class") pursuant to Federal Rules of Civil Procedure 23(b)(2), (3), defined as:

> All persons enrolled at Princeton who paid tuition and fees for the Spring 2020 term and thereafter for classes scheduled for in-person instruction who were denied that instruction for any part of the Spring 2020 term and thereafter.

37.  Excluded from the Class are Defendant, any of its past or present officers, directors, agents, and affiliates, any judge who presides over the action, and all counsel of record.

38.  Plaintiff reserves the right to expand, limit, modify, or amend the definitions of the class as may be desirable or appropriate during the course of the litigation.

39.  Class certification is proper because the question raised by the Complaint is one of a common or general interest affecting numerous persons so that it is impracticable to bring them all before the Court.

### Numerosity and Ascertainability

40.  The class is sufficiently numerous, as Defendant boasts an enrollment of approximately 8,483 students.  Class members may be identified through objective means, such as Defendant's records, and notified of the action by recognized methods of notice, such as mail or e-mail, or publication in print or on the Internet. Furthermore, Defendant maintains records and/or rosters of all of its attending students and their financial obligations and payments.

### Adequacy

41.  Plaintiff and his counsel are adequate representatives of the interests of the putative Class.  Plaintiff is a student at Princeton who is being charged tuition and fees as part of his enrollment.   He contends that Princeton has breached its agreement with students by continuing to charge and demand full or nearly full

tuition and fees, even though Princeton is not providing any in-person classroom instruction at its campus and not making campus facilities available for students.

42. Plaintiff has retained counsel experienced in class action litigation to litigate and represent the interests of Plaintiff, the Class Representative, and the Class.

## Typicality

43. Plaintiff's claims are typical of the claims being raised on behalf of the absent Class members. Like all absent Class members, Plaintiff seeks redress for Defendant's failure to provide any in-person campus instruction or campus facility, while continuing to charge full tuition and fees. The claims Plaintiff asserts are the same as and co-extensive with the claims raised on behalf of Class members.

## Superiority

44. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Here, classwide litigation is superior to individually litigating and adjudicating the dispute, because the cost of litigating an individual claim for partial refund of tuition or fees makes such individual litigation unfeasible, given the costs of bringing such an action relative to the amount of damages recoverable in an individual action.

45. A class action is also superior to other available methods for the fair and efficient adjudication of the controversy because it eliminates the prospect of inconsistent rulings that would unsettle the legal obligations or expectations of Defendant, Plaintiff, and Class members.

46. Because the damages suffered by each individual class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual class members to redress the wrongs done to each of them individually, so that the prosecution of specific actions and the burden imposed on the judicial system by individual litigation by the Class would be

significant, making class adjudication the superior option.

47.  The conduct of the action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each class member than would piecemeal litigation.  Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, any challenge of managing the action as a class action is substantially outweighed by the benefits to the legitimate interests of the parties, the Court, and the public of class treatment, making class adjudication superior to other alternatives.

## Commonality and Predominance

48.  Plaintiff's Complaint raises questions of fact or law common to the class that predominate over questions affecting only individual class members.  Among these predominating common questions are:

a.  Whether the relationship between Defendant and Plaintiff and members of the Class is contractual;

b.  What tuition and mandatory fees Plaintiff and Class members paid to Defendant;

c.  What tuition and mandatory fee refunds, if any, Defendant issued to Plaintiff and Class members;

d.  Whether Defendant breached its agreements with Plaintiff and Class members when Defendants failed to deliver to Plaintiff and Class members in-person instruction and the services for which they paid tuition and fees and subsequently refused to refund;

e.  Whether the refunds, if any, Defendant issued to Plaintiff and Class members were adequate to account for the cessation in in-person classroom instruction and services and the closure of campus facilities;

f.  Whether Defendant ceased providing in-person classroom instruction

to Plaintiff and Class members;

g.   Whether Defendant deprived Plaintiff and Class members of the use and enjoyment of campus services and facilities;

h.   Whether the value of online instruction is not equivalent to the value of the in-person classroom instruction that Plaintiff and Class members bargained for and for which they were and are continuing to be charged;

i.   Whether the value of campus facilities that Plaintiff and Class members were charged has been lessened as a result of Defendant's closing campus facilities;

j.   Whether Defendant's action in continuing to charge and demand full tuition and fees has harmed Plaintiff and Class members;

k.   Whether a method of computing classwide damages or restitution exists;

l.   Whether Defendant was unjustly enriched by retaining tuition and mandatory fee payments when Plaintiff and Class members did not receive the services for which they paid tuition and mandatory fees;

m.   Whether Plaintiff and Class members are entitled to declaratory or injunctive relief against Defendant; and

n.   Whether Defendant was unjustly enriched at the expense of Plaintiff and Class members.

49.   In the event that the Court were to find the proposed class definition inadequate in any way, Plaintiff respectfully prays for certification of any other alternative, narrower class definition or for the certification of subclasses, as appropriate.

## VI.    COUNT I

### Breach of Contract

### (On Behalf of Plaintiff and the Class Against All Defendants)

50.   Plaintiff re-alleges and incorporates by reference all previous allegations as though set forth in full herein.

51.   By the act of matriculation, together with payment of required fees, a contract between Plaintiff and Class members, on the one hand, and Defendant, on the other hand, was created, in addition to any enrollment contract that may have existed between Defendant and the Plaintiff.

52.   By ceasing all in-person classroom instruction, relegating Plaintiff and Class members to online instruction only and shutting off campus facilities to Plaintiff and Class members, Defendant failed to provide the services that Plaintiff bargained for in entering his contractual relationship with Defendant.

53.   Although Defendants may not bear culpability for the campus closures or the inability to provide any classroom instruction, neither do the enrolled students. Yet, while Defendant has used the current COVID-19 shutdown circumstances to excuse its obligation to fully perform the obligations of their bargain with its students, Defendant continues to demand that all students fully perform their contractual obligations to pay in full all tuition and fees, without any reduction for Defendant's failure to fully perform its contractual obligations.  This is contrary to the tenets of contract law.

54.   The nature of the instruction provided by Defendant at the time Plaintiff and Class members enrolled (*i.e.,* in-person classroom instruction), as well as the campus facilities Defendant offers, were and are material terms of the bargain and contractual relationship between students and Defendant.

55.   Defendant's failure to provide any in-person classroom instruction and its shutdown of campus facilities amounts to a material breach of the contract.

-14-

56.  As a result of Defendant's material breach—regardless of whether Defendant's performance may be excused—Plaintiff and Class members are not to be held liable for continuing to perform their contractual obligations.  That is, regardless of whether  Defendant's failure to offer in-person classroom instruction or to provide campus facilities is to be excused as a result of the COVID-19 pandemic,  Defendant cannot continue to demand full or nearly full payment of tuition and fees from Plaintiff and Class members for services and facilities that Defendant is indisputably failing to provide.

57.   Defendant's breach of express or implied contract, and its inequitable retention of the benefit of the payment of tuition and fees, are the proximate causes of Plaintiff's and Class members' injuries.

58.   Plaintiff and Class members have all been harmed as a direct, foreseeable, and proximate result of Defendant's actions because Plaintiff and Class members are being charged tuition and fees for services that Defendant is not providing.

59.   Plaintiff and Class members are entitled to an award of money damages or partial restitution in an amount to be determined at trial as redress for Defendant's breach.  Plaintiff prays for the establishment of a Court-ordered and Court-supervised common fund from which the claims of affected Class members may be paid and the attorneys' fees and costs of suit expended by class counsel, as approved by the Court, may be awarded and reimbursed.

60.   Defendant continues to insist that full tuition and fees are due from plaintiff and the students, despite Defendant's failure to fully perform its contractual obligations.  Unless restrained by way of injunctive relief, Defendant's conduct is reasonably likely to lead to irreparable harm.  Plaintiff and Class members are entitled to and hereby pray for injunctive relief to enjoin Defendant's continued conduct.

61.   Defendant continues to represent falsely on its web site that it offers

campus facilities with significant benefit and value to students and continues to represent falsely the value of its in-person on-campus classes. Unless restrained by way of injunctive relief, Defendant's conduct is reasonably likely to lead to irreparable harm. Plaintiff and Class members are entitled to and hereby pray for injunctive relief to enjoin Defendants' continued conduct.

62. Given the dispute and the contractual relationship between the parties, Plaintiff and Class members are entitled to and hereby pray for declaratory relief to have the Court declare the parties' respective obligations.

## VII.    COUNT II
### Breach of Implied Contract
### (On Behalf of Plaintiff and the Class Against All Defendants)

63. Plaintiff re-alleges and incorporates by reference all previous allegations as though set forth in full herein.

64. Plaintiff and Defendant entered into a contractual relationship where Plaintiff paid Defendant in the form of tuition and fees in exchange for in-person educational services and opportunities, including access to Defendant's facilities. Thus, in addition to any enrollment contract that may exist between Defendant and Plaintiff and Class members, an implied contract independently exists between the parties as a matter of New Jersey law.

65. By ceasing all in-person classroom instruction, relegating Plaintiff and Class members to online instruction only and shutting off campus facilities to Plaintiff and Class members, Defendant failed to provide the services that Plaintiff bargained for in entering his contractual relationship with Defendant.

66. Although Defendant may not bear culpability for the campus closures or the inability to provide any classroom instruction, neither do the enrolled students. Yet, while Defendant has used the current COVID-19 shutdown circumstances to

excuse its obligation to fully perform the obligations of their bargain with their students, Defendant continues to demand that all students fully perform their contractual obligations to pay in full all tuition and fees, without any reduction for Defendants' failure to fully perform their contractual obligations. The is contrary to the tenets of contract law.

67. The nature of the instruction provided by Defendant at the time Plaintiff and Class members enrolled (*i.e.,* in-person classroom instruction), as well as the campus facilities Defendant offers, were and are material terms of the bargain and contractual relationship between students and Defendants.

68. Defendant's failure to provide any in-person classroom instruction and its shutdown of campus facilities amount to a material breach of the contract.

69. As a result of Defendant's material breach—regardless of whether Defendant's performance may be excused—Plaintiff and Class members are not to be held liable for continuing to perform their contractual obligations. That is, regardless of whether Defendant's failure to offer in-person classroom instruction or to provide campus facilities is to be excused as a result of the COVID-19 pandemic, Defendant cannot continue to demand full payment of tuition and fees from Plaintiff and Class members for services and facilities that Defendant is indisputably failing to provide.

70. Plaintiff and Class members have all been harmed as a direct, foreseeable, and proximate result of Defendant's actions because Plaintiff and Class members are being charged tuition and fees for services that Defendant did not and/or are not providing.

71. Plaintiff and Class members are entitled to an award of money damages or partial restitution in an amount to be determined at trial as redress for Defendant's breach. Plaintiff prays for the establishment of a Court-ordered and Court-supervised common fund from which the claims of affected Class members may be

-17-

paid and the attorneys' fees and costs of suit expended by class counsel, as approved by the Court, may be awarded and reimbursed.

72.   Defendant continues to insist that tuition and fees are due from Plaintiff and the students, despite Defendant's failure to fully perform its contractual obligations.  Unless restrained by way of injunctive relief, Defendant's conduct is reasonably likely to lead to irreparable harm.  Plaintiff and Class members are entitled to and hereby pray for injunctive relief to enjoin Defendant's continued conduct.

73.   Defendant continues to represent falsely on its web site that it offers campus facilities with significant benefit and value to students and continues to represent falsely the value of its in-person on-campus classes.  Unless restrained by way of injunctive relief, Defendant's conduct is reasonably likely to lead to irreparable harm.  Plaintiff and Class members are entitled to and hereby pray for injunctive relief to enjoin Defendant's continued conduct.

74.   Defendant disputes its obligation to refund tuition and fees to Plaintiff and Class members.  Given the dispute and the contractual relationship between the parties, Plaintiff and Class members are entitled to and hereby pray for declaratory relief to have the Court declare the parties' respective obligations.

## VIII.        COUNT III

### Unjust Enrichment

### (On Behalf of Plaintiff and the Class Against All Defendants)

75.   Plaintiff re-alleges and incorporates by reference all previous allegations as though set forth in full herein.

76.   Plaintiff and Class members conveyed money to Defendant in the forms of tuition and fees for on-campus instruction and facilities that Defendant did not provide and is not providing.  Defendant has continued to retain these monies,

despite not providing the full benefit of on-campus classroom instruction and campus services and facilities.

77.   Through the conduct, Defendant have been unjustly enriched at the expense of Plaintiff and Class members.

78.   It would be inequitable to permit Defendants to retain all of the benefits Plaintiff and Class members conferred on Defendants the form of tuition and fees paid.

79.   Plaintiff and Class members are entitled to and hereby pray for an order of partial restitution as redress for Defendant's unjust enrichment.  Plaintiff prays for the establishment of a Court-ordered and supervised common fund from which the claims of affected Class members may be paid and the attorneys' fees and costs of suit expended by class counsel, as approved by the Court, may be awarded and reimbursed.

80.   Defendant continues to falsely represent on its web site that it offers campus facilities with significant benefit and value to students and continue to falsely represent the value of their in-person on-campus classroom instruction.  This is false in that such on-campus instruction is not being offered.  Defendant also continues to defy and deny requests for partial tuition or fee reimbursement, claiming that it is offering the same services for which Plaintiff and Class members bargained.  Unless restrained by way of injunctive relief, Defendant's conduct is reasonably likely to lead to irreparable harm.  Plaintiff and Class members are entitled to and hereby pray for injunctive relief to enjoin Defendant's continued conduct.

## IX.     <u>COUNT FOUR</u>

### Conversion

### (On Behalf of Plaintiff and the Class Against All Defendants)

81.   Plaintiff re-alleges and incorporates by reference all previous allegations as though set forth in full herein.

82.   Defendant received money from Plaintiff and Class members in the form of tuition and fee payments.

83.   The money Plaintiff and Class members paid to Defendant was supposed to be used for the benefit of Plaintiff and Class members for Defendants' provision of on-campus university classroom instruction and to make available to Plaintiff and Class members campus services and facilities.

84.   Defendant wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiff and Class members by effectively closing its campus to in-person classroom instruction and switching to a virtual online-only format, discontinuing paid-for services, and evicting students from campus housing.[20]

85.   Defendant received and wrongfully kept the money Plaintiff and Class members paid for tuition and fee payments, because Defendant has not provided campus facilities or on-campus instruction for the Winter/Spring term.   More specifically, Defendant failed to provide to Plaintiff and Class members the benefits—such as in-person classroom instruction and related academic activities, access to campus services, facilities, and in-person extracurricular, athletic, and other student activities—that Plaintiff and Class members paid the tuition and mandatory campus and student services fees to secure.

---

[20] https://www.dailyprincetonian.com/article/2020/04/anything-to-not-go-home-covid19-evictions-desperation-and-mutual-aid (last visited Nov. 16, 2020).

86. Plaintiff and/or Class members have requested that Defendant issue refunds.

87. Defendant refused to return, and has thus wrongfully retained, a portion of tuition and mandatory campus and student services fees for the Spring 2020 semester. Defendant, therefore, is indebted to Plaintiff and Class members for the failure to provide on-campus classroom instruction and campus facilities.

88. Defendant's actions have damaged Plaintiff and Class members in the amounts of the tuition and mandatory campus and student services fees that Defendant improperly withheld.

89. Plaintiff and Class members hereby pray for the full panoply of remedies available as redress for conversion, including a constructive trust over such monies had and received for which the benefit was not provided, restitution or disgorgement, as appropriate, and declaratory and injunctive relief.

## X.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that the Court finds against Defendant as follows:

1. An order certifying the action as a class action as defined herein, appointing Plaintiff as Class representative, his counsel as Class counsel, and directing that notice be disseminated to the absent Class members;

2. For judgment in favor of Plaintiff and Class members and against Defendants on all counts and claims for relief;

3. For compensatory, consequential, general, and special damages and/or restitution in an amount to be determined at trial;

4. For statutory damages, treble damages, and special or exemplary damages to the extent permitted by law;

5. Pre-judgment and post-judgment interest at the maximum legal rates; and

6.  For the establishment of a Court-ordered and -supervised common fund to be funded by Defendant and from which claims of all eligible class members will be paid, attorneys' fees awarded to class counsel will be paid, costs of suit approved by the Court and incurred by Class counsel will be reimbursed, and any award of interest will be disbursed;

7.  For interest as permitted by law;

8.  For an award of attorneys' fees;

9.  For costs of suit;

10. For declaratory relief, to have the Court declare the obligations of the parties;

11. For injunctive relief to enjoin Defendant's ongoing conduct; and

12. For all such other relief as the Court deems just and proper.

## XI.     DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff REID ZLOTKY, on behalf of himself and all others similarly situated, hereby demands a jury trial with respect to all issues triable of right by jury.

## I.     CERTIFICATION

It is hereby certified that, pursuant to L.Civ.R. 11.2, the matter in controversy is not presently the subject of any other action pending in any court or of an arbitration proceeding to date.

Dated:  November 19, 2020

By:    **McOMBER McOMBER & LUBER, P.C.**

*/s/ Charles J. Kocher*
Matthew A. Luber, Esq. (NJID 017302010)
Charles J. Kocher, Esq. (NJ ID 016952004)
McOmber McOmber & Luber, P.C.
39 E. Main Street
Marlton, NJ 08053
(856) 985-9800 Phone
(856) 263-2450 Fax
*Attorney for Plaintiff and Putative Class*


**SHEGERIAN & ASSOCIATES, INC.**


By:    */s/ Carney Shegerian*
Carney R. Shegerian[21]
Anthony Nguyen
Cheryl A. Kenner
SHEGERIAN & ASSOCIATES, INC.
145 South Spring Street, Suite 400
Los Angeles, California 90012
Telephone: (310) 860 0770
Facsimile:  (310) 860 0771

Attorneys for Plaintiff REID
ZLOTKY, on behalf of himself
and all others similarly situated

---

[21] *Pro Hac Vice* applications forthcoming.